UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIR SHABAZZ,<br><br>    Plaintiff,<br><br>v.<br><br>JEFFREY A. BEARD, *et al.*,<br><br>    Defendants. | Case No. 1:15-cv-00881-DAD-EPG (PC)<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTIONS TO DISMISS BE GRANTED IN PART AND DENIED IN PART**<br><br>(ECF Nos. 39, 45, 53, 55) |

## I. INTRODUCTION

Plaintiff Amir Shabazz is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that various prison authorities violated the Eighth Amendment by transferring him to a prison that suffered from a Valley Fever epidemic and that he has contracted Valley Fever as a result.

Three motions to dismiss are presently before the Court. For the reasons discussed below, the Court recommends that Defendant Kelso's motion to dismiss (ECF No. 39) be granted without leave to amend. The Court further recommends that Defendants Tonya Rothchilds, James A. Yates, Susan L. Hubbard and Deborah Hysen's motion to dismiss (ECF No. 45, 55) be granted with leave to amend. Finally, the Court recommends that Defendants Felix Igbinosa and Dwight Winslow's motion to dismiss (ECF No. 53) be granted, in part, with leave to amend, and denied, in part.

1

## II. ALLEGATIONS IN SECOND AMENDED COMPLAINT

Plaintiff was previously confined at Pleasant Valley State Prison from 2009 to 2011 and at Wasco State Prison from 2011 to 2012. He was then transferred to San Quentin State Prison. His complaint concerns the refusal of prison authorities to transfer him from Pleasant Valley State Prison until after he contracted Valley Fever.

Plaintiff names as defendants Secretary A. Beard, Secretary of California; Paul D. Brazelton, Warden at Pleasant Valley State Prison; Edmund G. Brown, Governor of California; Matthew Cate, Former Secretary of the California Department of Corrections and Rehabilitation (CDCR); Susan L. Hubbard, former director, division of adult operations; Deborah Hysen, Chief Deputy Secretary, Facilities, Planning, Construction and Management; Dr. Felix Igninosa, Medical Director, Pleasant Valley State Prison; J. Clark Kelso, Head of California Corrections Health Care Services; Tanya Rothchild, Former Chief of the Classification Service Unit; Arnold Schwarzenegger, Former Governor of the State of California; State of California, Public Entity; and Dwight Winslow, Former Medical Director.

Plaintiff is a 65-year old African American male. Plaintiff was transferred from Lancaster State Prison to Pleasant Valley State Prison in 2009. While in transit through North Kern State Prison en route to Pleasant Valley State Prison, Plaintiff made medical staff aware of his history of having chronic asthma and viral hepatitis C and asked to remain at North Kern State Prison or be transferred to a prison that did not have a Valley Fever epidemic. Plaintiff was nonetheless transferred to Pleasant Valley State Prison and remained there from 2009 through 2011.

Plaintiff cannot exert himself physically without feeling winded. At times, Plaintiff's physical pain is so acute he cannot get out of bed. Plaintiff believes his lungs are permanently compromised and he will suffer painful ailments forever. Plaintiff alleges that he has been subjected to a "Hate Crime" by Defendants and asserts claims under 42 U.S.C. § 1983 and the Federal Tort Claims Act.

\\\

2

### III. PROCEDURAL HISTORY

The Court screened the Complaint initiating this action pursuant to 28 U.S.C. §1915A and issued an order on June 26, 2015, dismissing the Complaint with leave to amend. (ECF No. 10.) On July 30, 2015, Plaintiff filed a First Amended Complaint, which was again dismissed with leave to amend. (ECF Nos. 13, 19.)

On October 6, 2016, Plaintiff filed a Second Amended Complaint (the "SAC"). (ECF No. 26.) The Court screened the SAC and issued findings and recommendations regarding the SAC on November 1, 2016. (ECF No. 27.) The Court recommended dismissal of the SAC for failure to state a claim. (*Id*.)

In the Order adopting, in part, and declining to adopt, in part, the November 1, 2016 Findings and Recommendations, U.S. District Judge Dale A. Drozd found that Plaintiff should be allowed to "proceed on his Eighth Amendment claim in his [SAC]," but noted that "plaintiff's Eighth Amendment claim may not be brought against certain defendants in their supervisorial capacities." (ECF No. 29.)

On March 7, 2017, the Court found service of the SAC appropriate on a subset of the named defendants, (ECF No. 31), and issued findings and recommendations recommending the other named defendants who appeared to be sued in a purely supervisorial capacity be dismissed from this action, (ECF No. 30). Specifically, the Court stated that:

> Because the SAC alleges no more than a supervisory role for some defendants, the Court finds that the SAC fails to state a claim against defendants: Edmund G. Brown, Governor of California; Arnold Schwarzenegger, former Governor of California; Jeffrey A. Beard, former Secretary of the Department of Corrections and Rehabilitation; and Matthew Cate, former Secretary of the Department of Corrections and Rehabilitation.

(*Id*. at 2.)

Judge Drozd adopted the findings and recommendations in full and dismissed defendants Edmund G. Brown, Arnold Schwarzenegger, Jeffrey, A. Beard, and Matthew Cate. (ECF No. 44.) After this Order, the case then proceeded against the eight remaining defendants: Paul D. Brazelton, Susan L. Hubbard, Deborah Hysen, Felix Igbinosa, J. Clark Kelso, Tonya Rothchilds, Dwight Winslow and James A. Yates. (ECF No. 31.)

Seven of the eight remaining defendants[1] have now filed motions to dismiss. (ECF Nos. 39, 45, 53.) The motions argue, generally, that Plaintiff's SAC fails to establish personal liability against them, and even if he could, they are immune.

## IV. APPLICABLE LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.,* 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

### B. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

---

[1] Defendant Brazelton has not appeared. The Court received notice that service was returned unexecuted on June 30, 2017. (ECF No. 38.) Plaintiff has been ordered to show cause as to why defendant Brazelton should not be dismissed for failure to effectuate service and failure to substitute him as a party. (ECF No. 60.)

4

> secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941

(1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

### V. DISCUSSION

#### A. Plaintiff's Eighth Amendment Claim

Judge Drozd's February 23, 2017 Order summarizes the remaining Eighth Amendment claim as follows:

> In 2009, he was transferred from Lancaster State Prison to Pleasant Valley State Prison ("PVSP"). While in transit and at Delano State Prison, he made medical staff aware of his history of chronic asthma and viral Hepatitis C, and that he was susceptible to contracting coccidioidomycosis, or "Valley Fever." Plaintiff asked to remain at Delano State Prison or be transferred a different prison that did not have a known Valley Fever epidemic. Prison officials disregarded plaintiff's request, and after he was transferred to PVSP, plaintiff was diagnosed with Valley Fever in 2010. (*See* Doc. No. 26.) Plaintiff's Eighth Amendment claim is based on prison officials' alleged deliberate indifference in placing him at PVSP despite knowledge of the risks that such a placement would pose.

(ECF No. 29 at 2.)

In other words, the appropriate defendants in this case are the prison officials who had knowledge that Plaintiff was susceptible to contracting Valley Fever but did not take any action prevent Plaintiff's placement in PVSP. Defendants Kelso, Rothchilds, Yates, Hubbard, Hysen,

6

Igbinosa and Winslow have moved for dismissal on the basis that Plaintiff has failed to allege that they committed any specific acts or omissions which would give rise to liability.

The SAC makes infrequent mention of the defendants by name. Plaintiff identifies the eight remaining defendants by their official title in the SAC as follows:

1. Paul D. Brazelton, Warden at Pleasant Valley State Prison;
2. Susan L. Hubbard, former Director of Division of Adult Operations;
3. Deborah Hysen, Chief Deputy Secretary, Facilities, Planning, Construction and Management;
4. Dr. Felix Igninosa, Medical Director, Pleasant Valley State Prison;
5. J. Clark Kelso, Head of California Corrections Health Care Services;
6. Tanya Rothchild, Former Chief of the Classification Service Unit; and
7. Dwight Winslow, Former Medical Director.

(ECF No. 26 at 1-2, 4-5.)[2] The SAC then specifically alleges as follows:

> Prior to Plaintiff's 2009 transfer, Defendant[s] Cate, Hubbard, Igbinosa, Kelso, Schwarzenegger, [Rothchilds], Winslow and Yates were all in a position to prevent Plaintiff from being transferred to or accepted at PVSP and WSP. All of the Defendant[s] knew that African-American[s] and person[s] with respiratory health complication were particularly susceptible to Valley Fever, yet the Defendant[s], and each of them, failed to act to prevent Plaintiff from being housed at PVSP and WSP…

(*Id*. at 7 ¶ 9.) Plaintiff further alleges that "Defendant[s] Brazelton [and] Igbinosa [were] aware that Plaintiff was an African-American and that he had a level of respiratory compromise [and] ignored or denied his request [for transfer out of PSVP in 2009]…" (*Id.*)

With respect to defendants Brazelton and Igbinosa, Plaintiff alleges that they were personally aware of his condition and denied his request to be transferred out of PSVP. While the Court acknowledges that the allegations against Defendants Brazelton and Igbinosa border on conclusory, it appears that the allegations SAC are sufficient to give these two defendants fair notice of what the claim is and the grounds upon which it rests. *See Twombly*, 550 U.S. at

---

[2] The SAC does not provide a title for defendant Yates.

7

555 (providing that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,' *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)"). Furthermore, these allegations fit into the Judge Drozd's description of the remaining Eighth Amendment Claim. (ECF No. 29 at 2, "Plaintiff's Eighth Amendment claim is based on prison officials' alleged deliberate indifference in placing him at PVSP despite knowledge of the risks that such a placement would pose.")

However, the Court agrees with Defendants Kelso, Rothchilds, Yates, Hubbard, Hysen, and Winslow that the allegations in the SAC are insufficient to state a claim against them. Unlike defendants Brazelton and Igbinosa, Plaintiff alleges only that these defendants "were all in a position to prevent Plaintiff from being transferred to or accepted at PVSP" and no further allegations are specified. Thus, it would appear from the allegations in the SAC that the claims against defendants Kelso, Rothchilds, Yates, Hubbard, Hysen, and Winslow are based entirely upon the supervisory positions they hold with the state of California, and that they did not personally participate in an alleged violation of Plaintiff's Constitutional rights. Nor has Plaintiff brought sufficient allegations to establish a claim that these supervisory defendants promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen*, 885 F.2d at 646; *Taylor*, 880 F.2d at 1045.

Accordingly, the Court will recommend that the defendants' motions to dismiss be denied as to defendant Igbinosa and granted as to defendants Kelso, Rothchilds, Yates, Hubbard, Hysen, and Winslow.

### B. Leave to Amend

Defendants further argue that leave to amend should not be granted because any such amendment would futile. "Rule 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. Pro. 15(a)(2); *C.F. v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011); *Zucco Partners, LLC v. Digimarc Ltd.*, 552 F.3d 981, 1007 (9th Cir.

2009). "This policy is to be applied with extreme liberality." *C.F.*, 654 F.3d at 985; *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). The Court can only dismiss a *pro se* claims with prejudice if it is absolutely clear that no amendment can cure the defects in the operative complaint. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

Here, Defendant Kelso argues that leave to amend would be futile because, even if Plaintiff could theoretically allege an Eighth Amendment claim him, he has quasi-judicial immunity from suit. (ECF No. 39-1 at 24.) Defendant Yates and Rothchild argue that even if Plaintiff were to allege additional facts, amendment would be futile because they are entitled to qualified immunity. (ECF No. 45-1 at 22.) Defendants Hubbard, Hysen, Igbinosa and Winslow also set forth qualified immunity arguments in their motions to dismiss. (ECF Nos. 53, 55.) The Court will consider these arguments below.

### C. Quasi-Judicial Immunity

On October 3, 2005, U.S. District Judge Thelton Eugene Henderson of the U.S. District Court for the Northern District of California "issued detailed findings of fact and conclusions of law explaining the Court's June 30, 2005 oral ruling to establish a Receivership to take control of the delivery of medical services to all California state prisoners confined by the California Department of Corrections and Rehabilitation ("CDCR")." *Plata v. Schwarzenegger, et al.*, No. C01–1351–TEH (N.D. Cal. Jan. 23, 2008). That Court's February 14, 2006 Order originally appointed Robert Sillen to serve as the Receiver effective Monday, April 17, 2006. *Id*. (N.D. Cal. Feb. 14, 2006). On January 23, 2008, Defendant J. Clark Kelso was appointed to replace Robert Sillen as the receiver for CDCR's health care system. *See id*. (N.D. Cal. Jan. 23, 2008).

9

The *Plata* court's February 14, 2006 Order directs that the "Receiver and his staff shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vest with this Court." *Id*. at *6 (N.D. Cal. Feb. 14, 2006). The January 23, 2008 order provided that "[a]ll powers, privileges, and responsibilities of the Receiver, as set forth in the Court's February 14, 2006 Order Appointing Receiver, shall continue in full effect, except as modified by subsequent orders of this Court." *Id*. at *5 (N.D. Cal. Jan. 23, 2008).

"Anglo–American common law has long recognized judicial immunity, a 'sweeping form of immunity' for acts performed by judges that relate to the 'judicial process.'" *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002), *as amended* (Sept. 6, 2002) (citing *Forrester v. White*, 484 U.S. 219, 225, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *Imbler v. Pachtman*, 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "Absolute judicial immunity is not reserved solely for judges, but extends to nonjudicial officers for 'all claims relating to the exercise of judicial functions.'" *Id*. (quoting *Burns v. Reed*, 500 U.S. 478, 499, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (Scalia, J., concurring in part and dissenting in part)).

Those judicial immunities extend to immunity from suit. *Mwasi v. Corcoran State Prison*, No. 113CV00695DADJLTPC, 2016 WL 5210588, at *5 (E.D. Cal. May 20, 2016) (citing *Pierson v. Ray*, 386 U.S. 547, 553-54, 87 S.Ct. 1213 (1967) ( "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction ...."); *Coleman v. Schwarzenegger*, 2007 WL 4276554 (E.D. Cal. Nov. 29, 2007) (holding that a receiver who was "imbued with the power and authority to act in the name of the Court as the Court's officer" had judicial immunity), *report and recommendation adopted sub nom. Mwasi v. Prison*, No. 113CV00695DADJLT, 2016 WL 5109461 (E.D. Cal. Sept. 19, 2016)). "There are two primary exceptions to the absolute judicial immunity: first, where the judge's action is 'not taken in the judge's judicial capacity'; and second, where the judge's action, 'though judicial in nature, is taken in the complete absence of all jurisdiction.'" *Stevens v. Cate*, No. 2:12-CV-0239 KJN P, 2012 WL

10

3962490, at *2 (E.D. Cal. Sept. 10, 2012) (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)).

In the instant case, Plaintiff's allegations against Kelso are solely that he was in a position of authority to prevent Plaintiff's transfer to an institution where Plaintiff would be susceptible to Valley Fever, but Kelso failed to do so. (ECF No. 26 at 7 ¶ 9.) There is no allegation to support or even imply that Kelso acted outside of his appointed judicial capacity or "in the complete absence of all jurisdiction." *See, e.g., Mwasi*, 2016 WL 5210588, at *5 (dismissing case against defendant Kelso and finding that Kelso is entitled to quasi-judicial immunity where plaintiff complained that Kelso failed to perform act in his capacity as Receiver). Accordingly, the Court finds that defendant Kelso is entitled to quasi-judicial immunity and the claims against him in this case should be dismissed with prejudice.

### D. Qualified Immunity

Defendants Rothchilds, Yates, Hubbard, Hysen, Igbinosa and Winslow argue in their motions to dismiss that they are entitled to qualified immunity because 1) they did not violate Plaintiff's constitutional rights, and 2) if they did, the right was not clearly established. In the February 23, 2017, Order, the Judge Drozd declined "to address the issue of qualified immunity at this early stage of the case." (ECF No. 29 at 3.) Judge Drozd noted specifically that "a number of recent Ninth Circuit opinions have suggested, dismissal of these types of cases on qualified immunity grounds before defendants are required to file an answer is premature." (*Id.*, citing *Sullivan v. Kramer*, 609 F. App'x 435, 436 (9th Cir. 2015); *Samuels v. Ahlin*, 584 F. App'x 636, 637 (9th Cir. 2014); *Johnson v. Pleasant Valley State Prison*, 505 F. App'x 631, 632 (9th Cir. 2013)).

The defendants have now appeared and filed a dispositive motion requesting adjudication of the qualified immunity question. "To determine whether an individual officer is entitled to qualified immunity, we ask (1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); *A.D. v. California Highway Patrol*, 712 F.3d 446, 453–54 (9th

11

Cir. 2013)). At the motion to dismiss stage, the court treats the allegations in the complaint as true and dismissal on qualified immunity grounds is not appropriate unless the court can determine from the face of the complaint that qualified immunity applies. *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

While the law regarding when qualified immunity applies in the context of Valley Fever is unsettled, the Court has found Magistrate Judge Michael J. Seng's analysis in *Allen v. Kramer*, No. 1:15-CV-01609-DAD-MJS-PC, 2016 WL 4613360 (E.D. Cal. Aug. 17, 2016) persuasive.[3] *See also Williams v. Biter*, No. 1:14-cv-02076-DAD-EPG-PC, 2017 WL 431353, at *10-13 (E.D. Ca. Jan 31, 2017) (finding *Allen* persuasive and ultimately determining that qualified immunity did not apply at the motion to dismiss stage of the case). Judge Seng notes *Allen* that:

> In those Valley Fever cases that have reached the question of qualified immunity, the constitutional right has been defined as an inmate's right to be free from exposure to the environmental toxin, coccidiomycosis. *See, e.g., Jackson I*, 2015 WL 5522088, at *17 ("[T]he constitutional right at issue in this case must take into account the specific Valley Fever context in which this case arose"), overruled on other grounds by *Jackson II; Smith v. Schwarzenegger*, Case No. 1:14-cv-60-LJO-SAB, 137 F. Supp. 3d 1233, 1243 (E.D. Cal. Oct. 7, 2015), appeal docketed Case No. 15-17155 (9th Cir. Oct. 29, 2015) (defining the right in the context of "an inmate's exposure to cocci while incarcerated"); *Jackson II*, 134 F. Supp. 3d at 1238 (same); *Smith*, 2016 WL 398766, at *3 (noting "the lack of authority delineating the contours of the rights of inmates vis-à-vis exposure to coccidiomycosis."). *See also Hines v. Youssef*, Case No. 1:13-cv-0357-AWI-JLT, 2015 WL 2385095, at *9 (E.D. Cal. May 19, 2015), appeal docketed, No. 15-16145 (9th Cir. June 8, 2015) ("[I]n the context of the application of criteria for exclusion from endorsement to prisons in the cocci hyper-endemic zone in 2008, the right to exclusion on account of any factors not previously recommended by an authoritative source or ordered by the receiver prior to the time of endorsement was not clearly established.")
>
> Under this factually specific definition, it is true that there is no controlling authority regarding an inmate's right to be free of exposure to coccidiomycosis,

---

[3]After Judge Seng issued the order finding that qualified immunity did not protect the defendants at the current stage of the proceeding, he issued findings and recommendations, finding cognizable claims against some of those defendants. *Allen v. Kramer*, 2016 U.S. Dist. LEXIS 130030, *1 (E.D. Cal. Sept. 22, 2016). U.S. District Judge Dale A. Drozd adopted the findings and recommendations in full. *Allen v. Kramer*, 2016 U.S. Dist. LEXIS 162844, *2 (E.D. Cal. Nov. 23, 2016).

and it is also true that "there has been longstanding disagreement among the judges of this district as to whether and under what circumstances inmates housed at prisons in the San Joaquin Valley, where Valley Fever is endemic, may state an Eighth Amendment claim for being exposed to Valley Fever spores while incarcerated." *See Jackson II*, 134 F. Supp. 3d at 1240 (citing *Jones v. Hartley*, Case No. 1:13-cv-1590-AWI-GSA, 2015 WL 1276708, at *2-3 (E.D. Cal. Mar. 19, 2015) (collecting cases)).

But this level of specificity is precisely the type cautioned against by the Supreme Court. Determining whether the contours of a right are sufficiently clear does "not require a case directly on point." *al-Kidd*, 563 U.S. at 741. Rather, it requires that "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* In that regard, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 US 730, 741 (2002). Indeed, the earlier cases need not even have facts that are "fundamentally similar" or "materially similar." *See id.* Though such cases "can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Id.*

Consistent with other judges in this District, this Court declines to define the constitutional right at a high level of generality. That is to say, the right cannot be defined as the right to be free from mere exposure to all environmental toxins. However, the undersigned also declines to swing the pendulum the other way and define the right at a highly specific level relating only to the particular toxin at issue here, i.e., coccidiomycosis. To be so fact-specific would likely entitle a defendant to qualified immunity in every novel factual scenario. This Court thus settles on a definition that falls somewhere in between.

*Allen*, 2016 WL 4613360, at *5-6.

After conducting extensive analysis and evaluation of relevant case law, Judge Seng concluded that the relevant clearly established legal right was that "**Plaintiff has a right to be free from exposure to an environmental hazard that poses an unreasonable risk of serious damage to his health whether because the levels of that environmental hazard are too high for anyone in Plaintiff's situation or because Plaintiff has a particular susceptibility to the hazard**." *Id.* at *6. In coming to this conclusion, Judge Seng relied on *Helling v. McKinney*, 509 U.S. 25 (1993):[4] "This definition takes into account the facts of this case

---

[4] In *Helling*, the plaintiff alleged that he was assigned to a cell with another inmate who smoked five packs of cigarettes a day. *Helling v. McKinney*, 509 U.S. 25, 28 (1993). One issue was whether this exposure to environmental tobacco smoke (ETS) could state a valid claim under the Eighth Amendment, even though Plaintiff had not yet suffered harm. *Id.* at 30. The Supreme Court upheld the decision of the Court of Appeals, finding that

13

without being overly and unnecessarily specific. It also stems directly from the holding of *Helling v. McKinney*, 509 U.S. 25 (1993), which the Court concludes 'placed the statutory or constitutional question beyond debate.' *al-Kidd*, 563 U.S. at 741." *Allen*, 2016 WL 4613360, at *6. Additionally, as Judge Seng noted:

> Though *Helling* directly addressed an inmate's exposure to ETS, it tacitly acknowledged other situations in which environmental factors can pose an unreasonable risk to an inmate's health, including exposure to "infectious maladies such as hepatitis and venereal disease" caused by overcrowding, unsafe drinking water, and "toxic or other substances." 509 U.S. at 33, 35. Along these lines, courts have relied on *Helling* to hold that an inmate has the right to be free from exposure to another environmental toxin, asbestos. In *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995), for example, the Ninth Circuit was asked to consider whether the district court improperly entered summary judgment for the defendants on plaintiff's Eighth Amendment conditions of confinement claim: "[T]he critical question before the district court was whether the defendants acted with 'deliberate indifference' in exposing Wallis to the asbestos in the [prison's] attics." *Id.* at 1076 (citing *Helling*). Noting that "[i]t is uncontroverted that asbestos poses a serious risk to human health," the Court reversed the grant of summary judgment after concluding that the evidence established that the defendants knew of the existence of the asbestos in the attic and the threat to the inmates' health from exposure to it but nonetheless forced plaintiff to clean the attic without protection. *Id. See also McNeil v. Lane*, 16 F.3d 123 (7th Cir. 1993) (finding that plaintiff's claim of mere exposure to asbestos insufficient to state a claim under *Helling*); *Doyle v. Coombe*, 976 F. Supp. 183, 188 (W.D.N.Y. 1997) ("It was not until 1993 that the United States Supreme Court held [in *Helling*] that an Eighth Amendment claim may be established from exposure to substances which might cause a delayed injury."); *Gonyer v. McDonald*, 874 F. Supp. 464, 466 (D. Mass. Feb. 1, 1995) (citing *Helling* in finding a cognizable Eighth Amendment claim for exposure to asbestos); *Carter v. Smith*, 2015 WL 4322317, at *7 (N.D. Cal. July 15, 2015) ("Exposure to toxic substances may be a sufficiently serious condition to establish the first prong of an Eighth Amendment claim, depending on the circumstances of such exposure, as explained by the Supreme Court in *Helling* .... Although *Helling* was a second-hand smoke case, the rule also applies to asbestos exposure.")
> 
> *Helling* has also been cited in cases involving exposure to other environmental factors claimed to pose an unreasonable risk of harm to health, including contagious diseases caused by overcrowding conditions, *Brown v. Mitchell*, 327

---

the plaintiff stated "a cause of action under the Eighth Amendment by alleging that petitioners have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Id.* at 35.

14

F. Supp. 2d 615, 650 (E.D. Va. July 28, 2004); contaminated water, *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001); compelled use of chemical toilets, *Masonoff v. DuBois*, 899 F. Supp. 782, 797 (D. Mass. Sep. 11, 1995) ("[I]f the future harm resulting from exposure to second-hand smoke can give rise to an Eighth Amendment violation, then surely daily contact with a hazardous substance which causes rashes, burning, tearing eyes and headaches meets the objective part of the test for a violation of the Eighth Amendment."); paint toxins, *Crawford v. Coughlin*, 43 F. Supp. 2d 319, 325 (W.D.N.Y. 1999); and other inmates' blood, *Randles v. Singletary*, 2001 WL 1736881, at *2 (M.D. Fla. Aug. 10, 2001).

*Allen*, 2016 WL 4613360, at *7-8 (footnote omitted).

The Court believes that, as laid out in Judge Seng's order (*id*.), defining the right in this way strikes the appropriate balance between taking into account the facts of this case and the Supreme Court's admonition in *al-Kidd*, 563 U.S. at 742 that courts should "not define clearly established law at a high level of generality." Thus, this Court evaluates Defendants' qualified immunity defense against what this Court believes is the right at issue, namely that **"Plaintiff has a right to be free from exposure to an environmental hazard that poses an unreasonable risk of serious damage to his health whether because the levels of that environmental hazard are too high for anyone in Plaintiff's situation or because Plaintiff has a particular susceptibility to the hazard."** *Allen*, 2016 WL 4613360, at *6.

The Court then looks to the allegations in Plaintiff's complaint to determine if Plaintiff has alleged conduct that, construing the facts in favor of Plaintiff, violates this right, and that every reasonable official would have understood to violate this right. Here, Plaintiff has alleged that he was exposed to an environmental hazard that posed an unreasonable risk of serious damage to his health (Valley Fever), and that he has a particular susceptibility to that hazard, i.e., Valley Fever, because he is an African American and he had pre-existing respiratory issues. (ECF No. 26 at 6-7 ¶¶ 7-9.) Plaintiff further alleges that Defendants were aware of this risk, but did nothing to remedy it. As a result of these conditions, Plaintiff claims that he contracted Valley Fever. (*Id.* at 7 ¶¶ 3, 8).

Thus, Plaintiff has pled facts showing that his rights were violated. Additionally, based on the case law described above and construing facts liberally in favor of Plaintiff, Plaintiff has

15

pled facts showing that every reasonable official would have understood that their actions violated Plaintiff's rights. Therefore, the Court finds that, at this stage in the proceedings, Defendants are not entitled to qualified immunity. However, the Court notes that this finding is based solely on construing the facts alleged as true and in favor of Plaintiff, which the Court must do at this stage in litigation. This finding is without prejudice to Defendants asserting this defense at a later stage in the proceeding.

Accordingly, the Court will recommend that defendant Igbinosa's motion to dismiss on qualified immunity grounds be denied. Because it is not "absolutely clear" at this time that "no amendment can cure the defect[s]" as to defendants Rothchilds, Yates, Hubbard, Hysen and Winslow, the Court will recommend that the dismissal of the Eighth Amendment claim in the SAC against be with leave to amend as to them. *See Lucas*, 66 F.3d at 248 ("Unless it is absolutely clear that no amendment can cure the defect, ... a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.").

### E. Punitive Damages

Finally, Rothchilds, Yates, Hubbard, Hysen, Igbinosa and Winslow request that the claim for punitive damages be dismissed pursuant to Rule 12(b)(6). The Ninth Circuit Court of Appeals has recognized that "[i]t is well-established that a 'jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.' " *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (quoting *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir.1993)). Additionally, "malicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages and foster 'deterrence and punishment over and above that provided by compensatory awards.'" *Id*. (citing *Smith v. Wade*, 461 U.S. 30, 45 n. 12, 46 n. 13, 54, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)).

Here, the defendants argue that the allegations in the SAC are insufficient to establish that punitive damages are appropriate in this case. The Court is not convinced, however, that a Rule 12(b)(6) motion to dismiss is the appropriate vehicle to challenge the sufficiency of a

16

prayer for punitive damages. *See, e.g., Elias v. Navasartian*, No. 115CV01567LJOGSAPC, 2017 WL 1013122, at *4 (E.D. Cal. Feb. 17, 2017) (explaining that "[r]ecent court decisions have held that because a prayer for relief is a remedy and not a claim, a Rule 12(b)(6) motion to dismiss for failure to state a claim is not a proper vehicle to challenge a plaintiff's prayer for punitive damages, because Rule 12(b)(6) only countenances dismissal for failure to state a claim"), *report and recommendation adopted*, No. 115CV01567LJOGSAPC, 2017 WL 977793 (E.D. Cal. Mar. 13, 2017).

Furthermore, Rule 54(c) provides that a final judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). "Citing this rule, the Ninth Circuit has found that a plaintiff need not include in his complaint a 'specific prayer for emotional distress or punitive damages' in order to give the opposing party proper notice of the claim against him." *Preayer v. Ryan*, No. CV-15-00069-PHX-DGC, 2017 WL 2351601, at *6 (D. Ariz. May 31, 2017) (citing *Cancellier v. Federated Dep't Stores*, 672 F.2d 1312, 1319 (9th Cir. 1982)). If a plaintiff need not even include a prayer for punitive damages in his complaint to receive an award of punitive damages, the Court agrees that it "makes little sense" to require detailed factual allegations to support a demand for punitive damages. *Elias*, 2017 WL 1013122, at *5 (citing *Soltys v. Costello*, 520 F.3d 737, 742 (7th Cir. 2008)).

Accordingly, the Court will recommend that this portion of the defendants' motions to dismiss be denied.[5]

**VI.    CONCLUSION AND RECOMMENDATION**

Accordingly, based on the foregoing, it is hereby RECOMMENDED that:

1. Defendant Kelso's motion to dismissed (ECF No. 39) be GRANTED and the Eighth Amendment claim against Defendant Kelso be DISMISSED with prejudice and without leave to amend;

---

[5] The Court's ruling is limited to the issue of whether a Rule 12(b)(6) motion to dismiss is an appropriate vehicle to challenge the sufficiency of a prayer for punitive damages. However, the Court notes that the lack of detail in the SAC concerning punitive damages could become problematic if this case proceeds to trial, and Plaintiff requests a jury instruction concerning punitive damages.

2. Defendants Tonya Rothchilds, James A. Yates, Susan L. Hubbard and Deborah Hysen's motion to dismiss (ECF No. 45, 55) be GRANTED and the Eighth Amendment claim against them be DISMISSED without prejudice and with leave to amend; and

3. Defendants Felix Igbinosa and Dwight Winslow's motion to dismiss (ECF No. 53) be GRANTED in part and DENIED in part as follows:
    a. The motion should be denied as to Defendant Igbinosa; and
    b. The motion should be granted without prejudice and with leave to amend as to Defendant Winslow.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30)** days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014), *citing Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __**February 27, 2018**__   /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE